JAMES WHEELER *vs.* WASON MANUFACTURING COMPANY.

Hampden. March 23. — Sept. 8, 1883. W. ALLEN, J., absent.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ and operating a circular saw used in sawing boards, there was evidence tending to show that boards, while being sawed, sometimes spring back; and that it is customary to put the hand behind the saw to steady a board which becomes unsteady in sawing; that, in sawing boards into strips, and in some other kinds of work, it is practicable to have a guard, of about the thickness of the saw, so placed behind the saw as to furnish protection in case of the board jumping back when the hand is behind the saw. It was admitted by the defendant that there was a guard which belonged to the saw used by the plaintiff, as a part of its equipment, and which was kept about it, and was used with the saw or not, as suited the convenience of the workmen; and there was evidence that this guard was not high enough to afford any protection. The plaintiff testified that there was no guard on the saw on the day of the accident, and that he did not know there was any belonging to it. There was also evidence tending to show that the plaintiff was inexperienced in the use of circular saws; and that, until that day, he had never undertaken to run one. *Held*, that there was evidence to be submitted to the jury that the saw was in an unsafe and improper condition for the plaintiff to be put to work upon. *Held, also*, that it was a question for the jury whether a guard was reasonably necessary. *Held, also*, that there was evidence which would warrant the jury in finding that there was danger in using the saw, known by the defendant and not known by the plaintiff, and which he might not have known, though in the exercise of ordinary care.

A master's duty of giving notice to his servant of risks to which the latter will be exposed in the course of his employment, when such duty exists, is an absolute one, and is not performed by delegating it to a third person, who, though competent for that purpose, fails to give the proper information.

At the trial of an action for personal injuries occasioned to the plaintiff while operating a circular saw in the defendant's employ, witnesses called by the defendant testified that they had seen guards upon circular saws at various times, without describing them; and that a guard, if of sufficient height, would furnish a great protection under certain circumstances. One R. testified of a guard in use on his saw; and that he had never seen another guard like the one used by him. There was nothing to show that the guard used by R. differed

in principle from those spoken of by the other witnesses, or from that belonging to the defendant's saw, except in respect to its height. The judge instructed the jury, that if, in their opinion, the defendant, in the use of ordinary care, ought to have furnished a guard similar to that testified of by R. as in use upon his saw, and the accident happened by reason of the defendant's failure to furnish it, the defendant would be liable. *Held*, that the defendant had no ground of exception.

TORT, for personal injuries occasioned to the plaintiff while operating a circular saw in the defendant's employ. At the trial in the Superior Court, before *Knowlton*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*N. A. Leonard & G. Wells*, for the defendant.

*G. M. Stearns*, for the plaintiff.

C. ALLEN, J. The presiding judge properly refused to rule that, upon all the evidence in the case, the jury would not be warranted in finding that the saw was in an unsafe or improper condition. The general duty of a master who employs a servant upon dangerous machinery, like a circular saw, to take all reasonable precautions for the safety of the servant, is not denied, or open to doubt. The question in this case was, whether the defendant had performed this duty. We cannot say, as matter of law, that the fact that such saws are ordinarily used without a guard, is conclusive to show that a saw without a guard is in a safe and proper condition for a workman as inexperienced as the plaintiff was. There was evidence tending to show that boards while being sawed sometimes spring back, and that it is customary to put the hand behind the saw to steady a board which becomes unsteady in sawing; so that, if the board springs back under such circumstances, it is liable to bring the hand of the workman directly upon the saw. This is the way in which the accident in the present case appears to have happened. There was evidence, not only on the part of the plaintiff, but on the part of the defendant, tending to show that it is practicable, in sawing boards into strips, and in some other kinds of work, to have a guard, of about the thickness of the saw, so placed and adjusted behind the saw as to furnish a great protection in case of the board jumping back when the hand is behind the saw. It was also admitted by the defendant that there was a guard which belonged to this saw, as a part of the equipment of the machine,

and which was kept about it, and which was used with the saw or not, as suited the convenience of the workmen; and there was evidence, apparently from the defendant's witnesses, that this guard was not high enough to afford any protection. However this may have been, the plaintiff testified, and his testimony on this point does not appear to have been contradicted, that there was no guard on the saw the day of the accident, and that he did not know that there was any belonging to it. There was also evidence tending to show that the plaintiff was inexperienced in the use of circular saws, and that, until that day, he had never undertaken to run one.

This case, therefore, is not like one where a practised and skilful workman is set to work upon machinery which, though dangerous in itself, and requiring the use of great care, he nevertheless thoroughly understands, and is willing to take the risk of using, in the condition in which he finds it. We cannot say that the jury would not be warranted in finding that the saw was in an unsafe and improper condition for the plaintiff, a beginner in the use of such machinery, to be put to work upon.

The refusal to rule that the defendant was not bound to provide a saw with any guard or protection rests upon the same ground. It was a question of fact what protection should be afforded, or whether any guard was reasonably necessary.

We also think that there was evidence which would warrant the jury in finding that there was danger in using the saw, which was known by the defendant and not known by the plaintiff, and which he might not have known, though in the exercise of ordinary care. The jury might well hold the defendant to be acquainted with the tendency of a board, when warped, to spring back during the operation of sawing; and also with the tendency, especially on the part of an inexperienced person, to put his hand around behind the saw for the purpose of steadying the board, if running unsteadily. This is not a danger so obvious that an inexperienced workman, just beginning to learn how to use a circular saw in splitting boards, must be held necessarily to take cognizance of it. The general danger of contact with such a saw, when in motion, is plain; the particular danger to be guarded against, from behind the saw, which according to some

of the testimony is the danger from which accidents most commonly arise, might not be known without practice.

The defendant presents the further question, whether a master's duty of giving notice to his servant of risks and perils to which the latter will be exposed in the course of his employment, when such duty exists, is an absolute one, or whether it is merely the duty of taking reasonable and proper pains to inform the servant of them. This question arises in three forms: first, in the refusal to instruct the jury that if Fargo, the foreman, directed Pierce to give proper instruction and caution to the plaintiff, the latter cannot recover by reason of Pierce's failure to do so, if he was a competent person for that purpose; secondly, in the instruction, that, if there were dangers in the business known to the defendant, which by reason of the plaintiff's inexperience were unknown to him, and which by the exercise of ordinary care he could not have known, the defendant was bound at its peril to give him reasonable warning of them; and thirdly, in the exclusion of the evidence of what Fargo told Snow to do, in instructing and directing the plaintiff in the use of the saw, and superintending his work upon the machine. We do not understand that any question was raised as to the degree of minuteness to which the notice should extend, in respect to the details of the danger. That question was somewhat considered in *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572, 596. But the question here is the more general one, whether it is an affirmative, positive duty resting upon the master, for the non-performance of which he will be liable, or whether it can be delegated to a proper substitute, and he be thereby relieved from responsibility. We are of opinion that the duty resting upon the master is not merely one of reasonable care and diligence to give a proper notice; but that he is responsible in case the servant suffers through a want of receiving a proper notice of the risks to which he is exposed. The servant does not assume, and is not to bear the risk of, unknown and undisclosed perils; but he is held to take those risks which he knows, or which, by the exercise of ordinary care, he ought to know, to be incident to the nature of the business in the place where and the manner in which it is carried on. The master's duty is to provide machinery which is reasonably safe and proper; and if the use of it is attended with

special peril, such as his servants ought to know, and if there is accordingly, under the circumstances of the particular case, a duty resting upon him in respect to giving notice to the servants of such special peril, that duty is not discharged by delegating the performance of it to a third person. The servants should not be held to assume and undertake to bear the risk of latent and concealed perils, merely because the master takes reasonable care and pains to give notice of them. It is more reasonable to hold that, where the danger is known to the master and unknown to the servant, the master should be held to see to it that the servant, when put upon work which exposes him to the danger, should be informed of it. The master must not expose his servant to an unreasonable risk. Where the servant is as well acquainted as the master with the dangerous nature of the machinery or instrument used, or of the service in which he is engaged, he cannot recover. But where the master employs a servant in the use of machinery which he knows, but the servant does not know, to be attended with peculiar danger, we are all of opinion that he must be held responsible for an injury which occurs in consequence of his failure to see to it that a proper notice is given. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 583. *Sullivan* v. *India Manuf. Co.* 113 Mass. 396, 399. *Flike* v. *Boston & Albany Railroad*, 53 N. Y. 549. *Paulmier* v. *Erie Railroad*, 5 Vroom, 151. *Devitt* v. *Pacific Railroad*, 50 Mo. 302. *Dynen* v. *Leach*, 26 L. J. (N. S.) Ex. 221. *Williams* v. *Clough*, 27 L. J. (N. S.) Ex. 325.

An exception is also urged to the instruction of the judge, that if, in the opinion of the jury, the defendant, in the use of ordinary care, ought to have furnished a guard similar to that testified of by one Richards as in use upon his saw, and the accident happened by reason of its failure to furnish it, the defendant would be liable. This was not equivalent to an instruction that the defendant was bound to adopt any particular improvement, or new appliance or safeguard, but it was left to the jury to determine what in their opinion the defendant, in the use of ordinary care, ought to have done. It is true that Richards testified that he had never seen another guard like the one in use upon his saw. But some of the witnesses called by the defendant testified that they had seen guards upon circular saws, at various times,

without particularly describing them; and that a guard, if of sufficient height, would furnish a great protection under certain circumstances. There was nothing to show that the guard used by Richards differed in principle from those which were spoken of by the other witnesses, or from that belonging to the saw of the defendant, except in respect to its height. The essential thing would appear to be, to have the guard of sufficient height to prevent the workman's hand from being thrown upon the saw. We do not see that the reference to Richards's saw led the jury into the error of holding the defendant liable for a failure to adopt and apply a particular improvement.

For these reasons, in the opinion of a majority of the court, the entry must be                                    *Exceptions overruled.*