CHARLES JANILUS

*vs.*

THE INTERNATIONAL PAPER COMPANY.

Androscoggin.    Opinion December 31, 1914.

*Assumption of Risk.   Contract.   Exceptions.   Foreman.   Negligence.
Proximate Cause.   Reasonably Safe Place.   Vice Principal.*

Action on the case for damages for personal injuries sustained by the plaintiff
while employed as a laborer by the defendant.   The verdict was for the defend-
ant, and the case is before the Court on exceptions by the plaintiff to the
refusal of the presiding Justice to give certain rulings requested, and to portions
of the charge of the presiding Justice.

*Held:*

1.   The question of ordinary care and negligence when the facts are in dispute,
or even where they are undisputed, but intelligent and fair minded men may
reasonably arrive at different conclusions, is for the jury.

2.   When on an issue of assumption of risk by a servant who has sustained
injuries, the facts are controverted, or such that different inferences may be
drawn therefrom, the question of assumption of risk should be submitted to
the jury under proper instructions from the Court.   And when the risk to
which the servant is exposed is one that arises from the negligent conduct of
the master, having imported into the situation a factor of peril not ordinarily
incident to the business in which the servant is engaged, it is in legal termi-
nology an extraordinary one.   In such cases it is not incumbent upon the
plaintiff to either allege or prove want of knowledge and non-assumption.

3.   In order to be on his guard, and as surely safe and free from harm, the plain-
tiff should know the dangers known to the defendant.   The plaintiff had the
right to assume, in the absence of knowledge to the contrary, that he could work
in safety.   He had been working but three days, and it cannot be said as
matter of law that he assumed the risk.   He had the further right to rely upon
the belief that the defendant had performed the duty of furnishing him a
reasonably safe place in which to perform his work.

4.   This obligation of the master continues during the time reasonably occupied
by the servant on his premises, in going to and returning from his work.   Where
the injury is the result of concurring negligence of two parties, one is not
exempt from full liability, although the other was equally culpable.   And the
question must be left to the jury whether the first wrong doer's act was the
proximate cause of the injury.

On exceptions by plaintiff. Exceptions sustained. Verdict set aside. New trial granted.

This is an action on the case brought by the plaintiff to recover damages against the defendant for personal injuries, sustained by him while in the employ of the defendant. Plea, the general issue. The plaintiff had exceptions to certain instructions and refusals to instruct the jury by the presiding Justice. The jury returned a verdict for the defendant and the plaintiff filed a motion for a new trial.

The case is stated in the opinion.

*McGillicuddy & Morey*, for plaintiff.

*Newell & Skelton*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, JJ.

HANSON, J.    Action on the case for damages for personal injuries sustained by the plaintiff while employed as a laborer by the defendant. The verdict was for the defendant, and the case is before the Court on exceptions by the plaintiff to the refusal of the presiding Justice to give certain rulings requested, and to portions of the charge of the presiding Justice.

The case shows that the plaintiff entered the service of the defendant in the town of Rumford, in the County of Oxford, three days before he was injured, and that on the day of the injury he was directed, with others, to unload coal from cars standing on a track in the yard of the defendant. The cars containing the coal had been separated, or kept apart, to make a passageway for the workmen engaged in that work. After completing the work of unloading, the employees returned to their other employment, the plaintiff being the last to leave the car, and in returning was passing between the cars so separated when, as he claims, without any warning or signal, the cars were suddenly forced together by an engine of the Maine Central Railroad Company, and he was caught between them and injured. The cars were located so that the engine could not be seen by the employees.

The plaintiff's counsel in his exceptions states that "the defendant by its foreman notified the Maine Central Railroad about one half hour before the cars were actually ready that they were ready, and thereupon the Maine Central R. R. after having been so notified,

attached its engine and backed the car upon the plaintiff as stated. The cars were not entirely unloaded of the coal as a matter of fact when the defendant's foreman notified the Maine Central R. R. that the cars were ready for the engine to be attached thereto. The plaintiff immediately upon finishing unloading got out of the car with other workmen and followed them through the passageway between the cars. The Maine Central Railroad owned the cars, engine, and track, and employed the entire crew to operate the cars."

The declaration sets out "that the defendant carelessly and negligently caused an engine to be attached to the train, and without any warning or notice of any kind to the plaintiff, pushed the train of cars in and upon the remainder of the train  .   .   .   .   and caught the plaintiff thereby between the train of cars and severely wounded, lacerated and bruised his person," etc., and in conclusion recites "that the defendant company carelessly and negligently backed a train to which they had attached their engine carelessly and negligently, without any warning to this plaintiff, in and upon his person, doing the damage aforesaid."

The defendant claims "that the defendant had absolutely nothing to do with starting or management of the train beyond the practice of its foreman to notify the train crew when the cars were unloaded. If he was a fellow servant with the plaintiff, his negligence, if any, would not warrant a recovery of the defendant," "and that the proximate cause of the injury complained of was the negligence of the Maine Central Railroad, a third party, for which it is not responsible."

The requested instructions follow:

"1.   That the defendant by notifying the Maine Central Railroad that the cars were ready to be hauled out, when in fact they were not ready, and upon such notification the Maine Central Railroad attached its engine to the cars and thereby ran into the plaintiff without any warning either from the defendant or Maine Central Railroad, then the defendant is liable.

2.   That if the defendant by its Mr. Wood, who had the sole charge of notifying the Maine Central, carelessly and negligently did not take the means of informing itself whether this car in which the plaintiff was at work unloading was in fact not unloaded when Mr. Wood informed the Maine Central that the car was unloaded, then that is the negligence of the defendant company and for which it is liable.

3.  That the defendant owed the duty to the plaintiff of providing a reasonably safe place in which to work, and when it changed that place from reasonably safe by causing the Maine Central to back its train into the plaintiff, then it must have appraised and warned the plaintiff of the change."

The presiding Justice declined to give the first and second requested instructions except as they appear in the charge.

As to the third requested instruction, the presiding Justice in refusing to give the same as requested, said: "I cannot give this instruction. I will instruct the jury, however, that it is the duty of the defendant to provide a reasonably safe place in which to work, a reasonably safe place for its employees in which to work; and when by any act of the defendant, or any of its vice principals, it renders unsafe a place which was formerly safe, it may then be liable in damages, if other conditions of the case do not prevent."

The first two requests were properly refused. They are comprehended in, and the plaintiff was amply protected by the instruction given in response to the third requested instruction, which in connection with the charge states the law applicable to that branch of the case.

The remaining exception is to the following instruction given upon request of the jury for further instruction:

"The Court: I am informed through your foreman that certain members of the panel would like to know if Mr. Wood notified the Maine Central officials to shift the empty cars, would the International Paper Company be responsible? I can only repeat to you in substance my instructions upon that point. I defined what constituted a vice principal, and I think that the definition of that may remain in your memory; and I instruct you that if you find that Mr. Wood was a vice principal, and any act of a vice principal negligently done, the plaintiff being in the exercise of due care, would make the defendant corporation liable. But, the mere notification by Mr. Wood of the Maine Central people that the empty cars were ready to be moved out,—the mere notification of the Maine Central people by Mr. Wood of that fact, would not necessarily make the International Paper Company liable, for the negligence which the plaintiff complains of is that the defendant company negligently attached an engine to the cars. So that it must appear to you from all the evidence in the case, by a fair preponderance of that evidence, that

the International Paper Company was in control of the engine, and that the engine was negligently attached to the cars, and that the plaintiff was in the exercise of due care when the accident occurred. So bearing in mind, as I have said, all the time, that the plaintiff must show that he was in the exercise of due care, it must be shown that the International Paper Company, or some of its vice principals were in actual control of that engine at the time when the accident occurred, in order for the plaintiff to recover. If no vice principal of the International Paper Company was in actual control of the engine, then I instruct you you could not find a verdict for the plaintiff."

This exception should be sustained. The principal claim of the plaintiff raised by the pleadings was that the defendant carelessly and negligently caused an engine to be attached to the train, that a notice given by defendant's foreman when it ought not to have been given was the proximate cause of the injury, and that the defendant is liable because such notice in its effect rendered unsafe the place in which the plaintiff was working. This question as it related to the condition of the place, the question of assumption of risk, with that of due care and negligence, had been properly presented to the jury previously in the charge; but the instruction given was equivalent to directing a verdict for the defendant. It left no other issue than the question of actual control of the engine, which, as has been seen, was not a controverted question. There was no claim on the part of the plaintiff that the defendant, or its vice principal, controlled the engine, but the plaintiff did claim that the defendant by the premature notice to the trainmen caused the trainmen to attach the engine to the train before it was actually ready, thus performing an act which in its effect was the proximate cause of the injury, and in connection with the contention of the plaintiff that the defendant did not provide the plaintiff a safe place in which to work, raised the issue in the case whether the act of the defendant rendered unsafe the place in which the plaintiff was employed.

The defendant was charged with the duty of providing a suitable place for the plaintiff in which to perform his work. In the maintenance of this particular place as a safe place for its employees to work, it had been customary for some employee of the defendant to notify the Railroad employees "when the car was empty." By common consent this notification was a duty, so understood and

used by counsel and Court in the progress of the case and in the charge of the presiding Justice. It was a duty imposed upon the master, which from custom it appears had been performed by some one or more of the servants of the defendant. The case shows that this duty was assigned to or assumed by one Wood, who says he was foreman of the unloading of coal and wood for the defendant. The arrangement with the railroad company was practically a part or department of the defendant's business, and a very important part. It had continued for a series of years, and whatever the terms of the hiring, or freight rates, or charges of any kind, it clearly appears that in the matter of the performance of that part of the contract, the railroad company surrendered its rights and authority to the defendant to fix the time when certain cars should be removed. The case shows this, and enlarges upon the situation of the parties in this connection by showing, to again state it, that it was the duty of the defendant's servant to notify the railroad company when its cars were empty. This was in the first instance the duty of the defendant, and, if not done, or if improperly done by another for the defendant, by its vice principal, or any other servant, and injury results therefrom, the master is liable, as if he had himself acted. Ray on Negligence of Imposed Duties, page 37.

Defendant's counsel cites *Leavitt* v. *Railroad Co.*, 89 Maine, 509, as supporting his claim that the injury was caused by the independent act of the railroad company, and that the defendant is therefore not liable. In *Leavitt* v. *Railroad Co.*, an action on the case against the defendant for burning a mill, it was held that "the independent act of a third person that intervenes between the wrong complained of and the injury sustained is a good test of remoteness that forbids recovery," but it will be seen upon examination that the case is not in point; there the act under discussion was an independent act; the act of the third party complained of here was a concurring act, and the issue involved should have been submitted to the jury with proper instruction.

Defendant's counsel urges that the proximate cause of the injury was the negligence of the railroad company, while the plaintiff insists that the proximate cause of the injury was the negligence of the defendant, which negligence, the premature notice, concurring with that of the railroad company, produced the injury complained of. The issue thus raised, what was the proximate cause of the

injury, was clearly for the jury. *Mullen* v. *Zides*, 216 Mass., 203, citing *Turner* v. *Page*, 186 Mass., 600.

In *Neal* v. *Rendall*, 98 Maine, 69, an action growing out of a collision on a highway, it was held that in an action of negligence "where the injury is the result of two concurring causes, the defendant's negligence may be regarded as the proximate cause of an injury of which it is not the sole and immediate cause," citing *Lake* v. *Milliken*, 62 Maine, 240; and the Court further held that, "if the defendant's negligent, inconsiderate, and wrongful, though not malicious act, concurred with any other thing, person or event, other than the plaintiff's own fault, to produce the injury, so that it clearly appears that but for such negligent act the injury would not have happened, and both circumstances are clearly connected with the injury in the order of events, the defendant is responsible, even though his negligent, wrongful act may not have been the nearest cause in the chain of events or the order of time. *Ricker* v. *Freeman*, 50 N. H., 420, 9 Am. Rep., 267; Sherman & Readfield on Neg., Sec. 10.

There must be a necessary connection between the defendant's act and the plaintiff's injury. It is not necessary that the negligent act should be the efficient cause, *causa causans;* it is sufficient if it is a cause, which, if it had not existed, the injury would not have taken place. *Hayes* v. *Michigan Central R. R. Co.*, 111 U. S., 228. In that case judgment was reversed and a new trial ordered because the question was not submitted to the jury. . . . . Upon the question of causation another important consideration is, whether the injury suffered was one which it was the purpose of the law to prevent when it imposed upon the defendant the duty which he is charged with having violated."

The same opinion, quoting *Hill* v. *Winsor*, 118 Mass., 251, says: "The injury must be the direct result of the misconduct charged, but it is not to be considered too remote if, according to the usual experience of mankind, the result ought to have been reasonably apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to·be anticipated, not in the number of subsequent events and agencies which might arise."

*Lane* v. *Atlantic Works*, 111 Mass., 136, 139; *Marsh* v. *Paper Co.*, 101 Maine, 489.

The defendant claimed as well that, if the injury was caused by premature notice given by Wood, that Wood was a fellow servant and therefore the defendant was not responsible for his negligent act. The nature of the negligent act determines whether it is that of the employee or fellow servant, and, if the negligent servant was at the time performing one of the master's duties, the master is liable for his negligence, but not if the servant was not performing a duty imposed upon the master, though he was the superior of the injured servant. *Duke* v. *Lewiston*, 83 Maine, 211; *Shugrue* v. *Providence Telephone Co.*, Sup. Ct., R. I., Oct. 27, 1913, 88 Atl., 616. In neither case does the fact that the negligent servant is the superior of the injured servant, or vice versa, affect the question of the master's liability. Idem, citing 12 Am. & Eng. Ency. Law, 933; *Hanna* v. *Granger*, 18 R. I., 507, 508, 28 Atl., 659; *Morgridge* v. *Providence Telephone Co.*, 20 R. I., 386, 39 Atl., 328, 78 Am. St. Rep., 879, 52 Atl., 687; *Duke* v. *Lewiston*, 83 Maine, 211, supra.

Ordinary care and negligence are questions of fact, and this is so, even if the circumstances attending it are agreed or admitted, or are undisputed, when reasonable and fair minded men may arrive at different conclusions. *Water Co.* v. *Steam Towage Co.*, 99 Maine, 485.

The question of ordinary care and negligence when the facts are in dispute, or even where they are undisputed, but intelligent and fair minded men may reasonably arrive at different conclusions, is for the jury. *Elwell* v. *Hacker*, 86 Maine, 46; *Haggerty* v. *Granite Co.*, 89 Maine, 118; *Water Co.* v. *Steam Towage Co.*, 99 Maine, 485.

When on an issue of assumption of risk by a servant who has substantial injuries, the facts are controverted, or such that different inferences may be drawn therefrom, the question of assumption of risk should be submitted to the jury under proper instructions from the Court. *Herrera* v. *Manhattan Electric Supply Co.*, N. J. Court of Errors & Appeals, Nov. 17, 1913, 88 Atl., 1082; *Colfer* v. *Best*, 110 Maine, 465. And when the risk to which the servant is exposed is one that arises from the negligent conduct of the master, having imported into the situation a factor of peril not ordinarily incident to the business in which the servant is engaged, it is in legal terminology an extraordinary one. In such cases it is not incumbent upon the plaintiff to either allege or prove want of knowledge and non-assump-

tion.  *Vickery* v. *New London Northern R. R. Co.*, Supreme Court of
Errors of Connecticut, January 15, 1914, 89 Atl., 277; citing *Worden*
v. *Gore-Meenan Co.*, 83 Conn., 642, 78 Atl., 422.   See also *Baer* v.
*Baird Machine Co.*, 84 Conn., 269, 273, 79 Atl., 673.

In order to be on his guard, and as surely safe and free from harm,
the plaintiff should know the dangers known to the defendant.
*Wheeler* v. *Wason Mfg. Co.*, 135 Mass., 294; *Ciriack* v. *Woolen Co.*,
146 Mass., 182, and cases cited.   The plaintiff had the right to assume,
in the absence of knowledge to the contrary, that he could work in
safety.   He had been working but three days, and it cannot be said
as matter of law that he assumed the risk.   He had the further right
to rely upon the belief that the defendant had performed the duty of
furnishing him a reasonably safe place in which to perform his work.
*Randall* v. *Abbott Co.*, 111 Maine, 7;   And too, this obligation of the
master continues during the time reasonably occupied by the servant
on his premises, in going to and returning from his work.   Bevin on
Negligence, Vol. 1, page 77.   It has been seen that where the injury
is the result of concurring negligence of two parties, one is not exempt
from full liability, although the other was equally culpable.   *Water
Co.* v. *Steam Towage Co.*, 99 Maine, 473.   And the question must be
left to the jury whether the first wrongdoer's act was the proximate
cause of the injury.   Bevin on Negligence, Vol. 1, page 77, and cases
cited; *Slater* v. *Mersereau*, 64 N. Y., 139, and cases cited.

In the instruction excepted to, all other questions were taken from
the jury.   Although plainly not intended, such was the effect of the
instruction, and the plaintiff was prejudiced thereby.

*Exceptions sustained.*
*Verdict set aside.*
*New trial granted.*